# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| COREY TAYLOR, #534419, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 1:24-cv-00052 |
| SEBASTIAN BULLARD, et al., | ) JUDGE CAMPBELL |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Corey Taylor, a state inmate confined at the Turney Center Industrial Complex (TCIX), has filed a handwritten complaint under 42 U.S.C. § 1983 (Doc. No. 1), an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2), and a motion for temporary restraining order (TRO). (Doc. No. 5.)

The case is before the Court for ruling on Plaintiff's IFP application and TRO Motion and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA).

## I. APPLICATION TO PROCEED IFP

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). As pointed out in the Court's prior Order (Doc. No. 6), Plaintiff's IFP application was originally lacking a proper certified inmate trust account statement, as required by Section 1915(a)(2). He has now filed a Petition to Update Trust Account Information (Doc. No. 7) with the missing documentation; that Petition is **GRANTED**. Based on Plaintiff's filings, the Court is satisfied that he lacks the funds to prepay the filing fee. Accordingly, his IFP application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the

Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]t the motion-to-dismiss stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79). In determining whether such facts and inferences render the Complaint's claims plausible, the Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Facts**

The Complaint alleges that, on April 24, 2024, Plaintiff filed a grievance against Defendant Sebastian Bullard, a guard at TCIX, because Bullard had been targeting Muslim inmates for cell searches and taking their personal items while flaunting his authority to do what he wanted to them. (Doc. No. 1 at 1.) Plaintiff told a sergeant that he had filed the grievance, and the sergeant returned to Plaintiff the following day and confirmed that "Bullard seems to be targeting Muslims" and that his actions "are being looked into." (*Id.*) On April 29, Bullard confronted Plaintiff about

3

the grievance filing, using profane language. (*Id.* at 1–2.) Plaintiff reported the incident to Bullard's superior officer. Later that day, after Plaintiff had passed through a metal detector without an alarm sounding, Bullard nonetheless pulled him aside for a physical search and stated that he was going to "show [Plaintiff] how to fuck with me." (*Id.* at 2.) Plaintiff again reported Bullard to his superiors, who told Plaintiff to "just be patient and stay away from him and keep reporting him." (*Id.*) A few hours later, Bullard came to Plaintiff's cell and ordered him to step out while his cell was searched. (*Id.*) Unpleasantries were exchanged, and Plaintiff initially refused to leave his cell unless Bullard called for a sergeant. (*Id.*) Plaintiff ultimately agreed to step out of his cell while Bullard searched it. He was then able to alert a different guard to call for an officer, and Sgt. Smith responded to the call. (*Id.*)

Plaintiff recounted his recent history with Bullard to Sgt. Smith, and Smith agreed with Plaintiff that Bullard was in the wrong. (*Id.* at 2–3.) Nevertheless, Smith said that he had to take Plaintiff to segregation because Bullard had reported to him that Plaintiff had threatened to "kick [Bullard's] ass," and Smith had relayed the report to the shift captain. (*Id.* at 3.) Plaintiff told Smith that Bullard's report was untrue, and an attempt to retaliate against Plaintiff. Smith agreed with Plaintiff but told him that, since he had already made his report to the shift captain, Plaintiff would "have to deal with it in the disciplinary hearing and there's nothing else he could do." (*Id.*) Smith escorted Plaintiff to segregation, to a cell with a toilet that did not flush fully but backed up with waste from the adjoining cell. (*Id.*)

On April 29, 2024, Plaintiff was charged with threatening Bullard. (*Id.* at 3; Doc. No. 1-1 at 2–4.) He was advised to plead guilty to the disciplinary charge in order to avoid additional time in segregation, which would be the result if he forced an adjudication and was found guilty by the disciplinary board. (*Id.* at 3.) Plaintiff alleges that he "was forced to sign the charge under duress

4

Case 1:24-cv-00052   Document 8   Filed 07/29/24   Page 4 of 11 PageID #: 65

and intimidation" on May 2, 2024. (*Id.*) He was scheduled to be released from segregation on May 8, three days after the date his Complaint was signed. (*Id.*)

**C. Analysis**

Plaintiff asserts a claim of First Amendment retaliation against Bullard. (Doc. No. 1 at 3–4.) He asserts claims of negligence, intentional infliction of emotional distress, and deliberate indifference against Smith, "for making the willful decision to report a false allegation and withh[o]ld true events of the issue," causing Plaintiff "to be deprived of [his] liberty." (*Id.* at 4.) The Court liberally construes the Complaint against Smith to raise a due process claim under the Fourteenth Amendment.

To state a plausible claim of First Amendment retaliation, Plaintiff must allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

The nonfrivolous grieving or reporting of a correctional officer's misconduct is protected activity, *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), and Plaintiff has adequately alleged his filing of a grievance over Bullard's harassment of Muslim inmates such as Plaintiff, by repeatedly searching their cells and confiscating personal items. Plaintiff has also adequately alleged that Bullard responded to this grievance filing by harassing him in the days that followed with unjustified searches of his person and his cell, and ultimately by filing a false disciplinary charge against him after Plaintiff continued reporting Bullard to his superior officers. For purposes of initial review, these allegations are sufficient to establish Bullard's adverse action motivated by

5

Plaintiff's grievance filing and other reports of Bullard's wrongdoing. *See id.* at 416 (finding a prima facie claim of retaliation stated because filing a disciplinary charge and segregating an inmate pending a hearing "could deter a person of ordinary firmness from exercising his First Amendment rights") (citations and internal quotation marks omitted). Accordingly, this claim will proceed for further development.

However, the constitutional claim against Smith cannot proceed. Even if Plaintiff's confinement to segregation on a false charge inflicted an "atypical and significant hardship" giving rise to the requirement of due process safeguards, *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995), "[f]alse accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing." *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) (citations omitted). Plaintiff did not have such a hearing because he waived his right to defend against the charge and pled guilty to threatening Bullard. Although he claims that his guilty plea was entered "under duress," he describes the alleged duress as coming not from Smith, but from Plaintiff's assigned inmate advisor, who communicated that Plaintiff would be unlikely to prevail against Bullard before the disciplinary board and would therefore face a prolonged stint in segregation, when a guilty plea would result in the end of his time in segregation within a matter of days. (*See* Doc. No. 1 at 3.) Under these circumstances, Plaintiff fails to assert a viable constitutional claim against Smith.[1] His claim of

---

[1] Plaintiff also alleges that Smith had previously allowed a Caucasian inmate to avoid segregation even though he knew the inmate was on drugs (Doc. No. 1 at 4–5), potentially implicating the Equal Protection Clause of the Fourteenth Amendment. But the right to equal protection essentially requires the consistent treatment of "all persons similarly situated," and its violation requires "discriminatory intent or purpose," not mere "differential treatment alone." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citations omitted). The Court finds no basis for concluding that an inmate known by Smith to be using drugs is similarly situated to an inmate known by him to be accused (however incredibly) by another correctional officer of threatening violence against that officer. Nor would it be reasonable to infer that, if Plaintiff and the Caucasian inmate he describes are similarly situated, the difference in their treatment by Smith was due to his racially discriminatory intentions or purposes.

Smith's "deliberate indifference," construed here as a Fourteenth Amendment claim, will be dismissed with prejudice. Because no federal claim will be allowed to proceed against Smith, supplemental jurisdiction over the state-law claims against this Defendant should not be exercised. *See Davis-Stone v. Edwards*, No. 20-CV-11529, 2020 WL 5095519, at *3 (E.D. Mich. Aug. 28, 2020) (allowing federal claims to proceed against one defendant, dismissing federal claims against three other defendants, and declining to exercise supplemental jurisdiction over state-law claims against the three other defendants). Accordingly, Plaintiff's claims of Smith's negligence and intentional infliction of emotional distress will be dismissed without prejudice to his ability to pursue them in state court.

### III. TRO MOTION

Plaintiff seeks an emergency injunctive order to protect him from being targeted with further retaliatory harassment. (Doc. No. 5.) Federal Rule of Civil Procedure 65 governs the court's power to grant injunctive relief, including temporary restraining orders without notice. Fed. R. Civ. P. 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Ciavone v. McKee*, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10,

2009) (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). Further, "[w]here a preliminary injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act . . . the requested relief should be denied unless the facts and law clearly favor the moving party." *Glauser-Nagy v. Med. Mut. of Ohio*, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997) (citing cases).

In determining whether to issue a TRO or preliminary injunction under Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See, e.g.*, *A&W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022) (citing *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted). Where the movant seeks a mandatory injunction that alters the status quo, he "must satisfy a heightened burden . . . as to both the likelihood-of-success prong and on the balance of the harms." *Cole v. Goossen*, 402 F. Supp. 3d 992, 1012 (D. Kan. 2019); *accord Glauser-Nagy*, *supra* (mandatory injunction may issue only if "facts and law clearly favor the moving party").

At the pleading stage, the Court cannot say that Plaintiff is any more likely than Defendant to succeed on the merits of this retaliation lawsuit; at least, he has not met his heightened burden on this prong as required to justify an order commanding a change in the parties' conduct. As grounds for the requested TRO, Plaintiff states that Bullard engaged in retaliatory conduct against him a second time, on June 3, 2024, and that he fears that further antagonism from Bullard will

8

result in Plaintiff's return to segregation or otherwise cause him irreparable harm if the Court does not intervene. (*See* Doc. No. 5-2.) He proposes an injunctive order that requires Bullard (1) "[t]o refrain from any and all harassment, threats, intimidation and all retaliatory acts that are violative of Plaintiff's protected rights and the laws of the United States and the State of Tennessee," and (2) "to remain 1,000 ft away from Plaintiff and . . . to refrain from all communication with Plaintiff[.]" (Doc. No. 5-1.)

Plaintiff's proposal would effectively enjoin Bullard from engaging in bad behavior, as defined using terms (harassment, threats, intimidation, retaliation) that are too subjective to sustain any viable injunctive order. *See Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022) (an injunctive order "must be couched in specific and unambiguous terms" or else be subject to vacatur) (citing, *e.g.*, Fed. R. Civ. P. 65(d)(1)). Moreover, to justify emergency injunctive relief, Plaintiff must "clearly show" that he will suffer "immediate and irreparable injury, loss, or damage . . . before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Plaintiff's assertion that he fears further retaliatory or harassing actions does not involve "unsafe, life-threatening conditions" and does not "rise to the level of a substantial threat of suffering[] if the injunction is not granted, let alone irreparable injury." *Shelby v. Rowe*, No. 5:22-CV-265-BR, 2023 WL 4565975, at *2 (N.D. Tex. July 17, 2023); *see also Barno v. Padilla*, No. 20-CV-03886-SI, 2020 WL 8515011, at *1 (N.D. Cal. Dec. 13, 2020) (holding that prisoner seeking TRO to stop "ongoing unconstitutional pattern of threats, retaliation and harassment" from guards and fellow inmate "falls far short of showing that irreparable harm is likely and imminent if interim relief is not granted"); *Sublett v. Bryant*, No. 5:15-CV-16-JMH-REW, 2015 WL 5972427, at *2 (E.D. Ky. Oct. 14, 2015) ("The relief that Plaintiff seeks [in his TRO motion] is purely speculative—to be free from retaliation if he files future grievances."). Where the claimed irreparable damage is

speculative or may never occur, a TRO should not be granted. *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003).

Even if Plaintiff reasonably feared a non-speculative injury which could not be repaired in the normal course of litigation, and even if the terms of his requested injunctive order were more definite, a TRO in this situation would severely compromise the deference that state officials are generally afforded in the administration and control of a prison. The potential for resulting disruption requires the Court to proceed with the utmost care in recognition of the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286–87 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). By granting the relief requested in Plaintiff's proposed order and requiring Bullard to remain 1,000 feet away from him, the Court would effectively be restricting the work-related movements of a correctional officer inside the prison he is charged with securing. This outcome would unreasonably disrupt the integrity of TCIX's administration, in which the public has an established interest. *See Glover*, 855 F.2d at 286–87 (setting forth various public policy concerns relating to court intrusion into jail administrative matters and holding that a federal court should not "attempt to administer any portion of a state correctional system program except in the most compelling situations").

For these reasons, the balance of relevant factors demonstrates that Plaintiff has not carried his burden of demonstrating the need for emergency injunctive relief. Plaintiff's TRO Motion will be denied.

### IV. FURTHER PROCEEDINGS

As discussed above, Plaintiff has stated a nonfrivolous claim against Defendant Bullard. Accordingly, the Clerk is **INSTRUCTED** to send Plaintiff a service packet (blank summons and USM 285 form) for that Defendant. Plaintiff **MUST** complete the service packet and return it to

the Clerk's Office within **30 DAYS** of the date of this Order. Upon return of the completed service packet, **PROCESS SHALL ISSUE**.

Defendant Smith is **DISMISSED** from this action.

The Court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE