# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT COLUMBIA

| | | |
|---|---|---|
| **COREY TAYLOR** | ) | |
| | ) | |
| **v.** | ) | **NO. 1:24-cv-00052** |
| | ) | |
| **SEBASTIAN BULLARD** | ) | |

**TO:    Honorable Eli J. Richardson, United States District Judge**

## R E P O R T   A N D   R E C O M E N D A T I O N

This prisoner civil right action was referred to the Magistrate Judge for pretrial proceedings.  *See* Memorandum Opinion and Order entered July 29, 2024 (Docket Entry No. 8).

Pending before the Court is the motion for summary judgment (Docket Entry No. 28) filed by Defendant Sebastian Bullard.  Plaintiff opposes the motion.  For the reasons set out below, the undersigned respectfully recommends that the motion be granted.

## I.  BACKGROUND

Corey Taylor ("Plaintiff") is an inmate of the Tennessee Department of Correction ("TDOC") currently confined at the Turney Center Industrial Complex ("Turney Center") in Only, Tennessee.  He filed this lawsuit *pro se* and *in forma pauperis* on May 16, 2024, seeking various forms of relief under 42 U.S.C. § 1983 for violations of his constitutional rights alleged to have occurred at the Turney Center in April-May 2024.  *See* Complaint (Docket Entry No. 1).

Upon initial review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court found that Plaintiff stated a colorable First Amendment claim against Sebastian Bullard ("Defendant"), a correctional officer at the Turney Center, based on Plaintiff's

allegations that Defendant retaliated against Plaintiff for pursuing a prison grievance. *See* Memorandum Opinion and Order at 5-6. Plaintiff's claims against another correctional officer were dismissed upon initial review. *Id*. at 6-7.

After Defendant Bullard filed an answer (Docket Entry No. 13), a scheduling order was entered that provided for a period of pretrial activity in the case, including a period for discovery. All scheduling order deadlines have now expired. A trial date has not been set in the case pending resolution of the motion for summary judgment.

## II.  SUMMARY OF PLAINTIFF'S CLAIM

Plaintiff generally alleges that Defendant often doesn't follow prison policy and unnecessarily antagonizes inmates, particularly inmates who are Muslims, by speaking to them in a hostile and demeaning manner, by "repeatedly" searching their cells, and by "taking items such as pens and toilet paper" from inmates' cells. *See* Amended Complaint at 2.

The events at issue in the case, however, involve a small number of interactions between Plaintiff and Defendant that took place over the span of a week in April 2024. During the evening of April 24, 2024, Plaintiff was in the cell of another inmate when Defendant came to the cell and told Plaintiff that he needed to leave the cell. Plaintiff alleges that the other inmate was a Muslim Imam and that he and Plaintiff were privately speaking about a death that had occurred in Plaintiff's family. Plaintiff objected to how Defendant spoke to him and filed a prison grievance against Defendant for "staff misconduct malfeasance" based on the incident. *See* Grievance #365590/24-161, dated April 24, 2024 (Docket Entry No. 28-3 at 19-20). In the grievance, Plaintiff asserted that Defendant "got smart" during the incident and spoke in an ill-mannered, hostile, and rude way, and that Defendant's behavior did not comport with TDOC policy, ABA and ACA standards and "all that the TDOC stands for in rehabilitation, respect,

2

dignity, and humane welfare of the incarcerated." *Id*. Although the grievance was directed at only the incident between Plaintiff and Defendant in the cell, Plaintiff had 13 other inmates sign the grievance and asserted that the "treatment that I speak of" has also happened to these other inmates. *Id*. at 20. In his grievance, Plaintiff requested that Defendant not be allowed to continue to perform his duties. *Id*. Plaintiff alleges that he told another staff member, Sgt. Ricketts, about Defendant's conduct and about the grievance and that Ricketts agreed with Plaintiff that Defendant's conduct was wrong.[1]

Plaintiff alleges that five days later, on April 29, 2024, Defendant engaged in acts of harassment against him because of the grievance. Plaintiff alleges that Defendant again told Plaintiff to leave the cell of another inmate and also cursed at Plaintiff. Plaintiff alleges that when he went to lunch that day, Defendant searched him despite Plaintiff having already walked through a metal detector and said to him "I am [going to] show you how to fuck with me." *See* Complaint at 2. Plaintiff alleges that he reported both incidents to Sgt. Ricketts, who said that he had spoken to Defendant.

Defendant then came to Plaintiff's cell a few hours later and ordered Plaintiff to step out while his cell was searched. Plaintiff contends that this was harassment because the cells in the housing unit had already undergone cell inspections that day. Unpleasantries between the men were exchanged, and Plaintiff alleges that Defendant told him word to the effect of "you want to fuck with me so I am [going to] fuck with you." *Id*. Plaintiff states that he initially refused to

---

[1] The Court notes that, although the outcome of the grievance is not clear from the complaint, copies of the grievance procedure documents provided by Defendant as exhibits to his motion for summary judgment show that the grievance was denied based upon a prison supervisor's response that Plaintiff was out of place by being in another inmate's cell and that Defendant was correct in directing Plaintiff to exit the cell. *See* Docket Entry No. 28-3 at 14-17.

3

leave his cell unless Defendant called for a sergeant but that he ultimately stepped out of his cell while Defendant searched the cell and removed red pens from the cell. Plaintiff alleges that Sgt. Smith eventually arrived at the cell, at which time Plaintiff recounted his recent history of problems with Defendant but that Smith, while agreeing with Plaintiff that Defendant was wrong, nonetheless escorted Plaintiff to segregation because Defendant had reported that Plaintiff had threatened to "kick [Defendant's] ass." *Id*. at 2-3. That evening, Defendant issued a disciplinary report to Plaintiff for the disciplinary offense of threatening an employee based on Defendant's allegation that Plaintiff stated that he was "going to kick your ass" during the cell search. *See* Docket Entry No. 1-1 at 2–4.

Plaintiff pled guilty to the charge on May 2, 2024, but alleges that he was advised to do so by his inmate advisor so that he would avoid additional time in segregation that would accompany being found guilty of the charge after a hearing and that he "was forced to sign the charge under duress and intimidation." *See* Amended Complaint at 3. Plaintiff asserts that he was scheduled to be released from segregation on May 8, three days after the date his Complaint was signed.

### III. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendant seeks summary judgment in his favor under Rule 56 of the Federal Rules of Civil Procedure. In support of his motion, Defendant provides a memorandum of law (Docket Entry No. 29), a statement of undisputed material facts ("SUMF") (Docket Entry No. 30), his own declaration (Docket Entry No. 28-1), the declaration of correctional officer Lance Hansen, who spoke with Plaintiff while the cell search was occurring (Docket Entry No. 28-2), and excerpts from Plaintiff's deposition testimony and exhibits attached thereto (Docket Entry No. 28-3).

Defendant admits to the basic underlying events of this lawsuit but denies that any of his actions violated Plaintiff's First Amendment rights. He further asserts the defense of qualified immunity to any damage claims. Defendant argues that he is entitled to summary judgment because Plaintiff cannot establish that he engaged in constitutionally protected conduct and that he acted with a retaliatory motive when he issued the disciplinary report. Specifically, Defendant argues that the grievance filed by Plaintiff fails to constitute protected activity because the undisputed evidence shows that (1) the grievance complained only about how Defendant spoke to Plaintiff and thus involved a frivolous and *de minimis* matter and (2) the underlying conduct that Defendant confronted Plaintiff about prior to the grievance, being in another inmate's cell, was conduct that violated prison rules and regulations. Defendant also argues that he could not have been motivated to file the disciplinary report in retaliation for the grievance because there is a lack of evidence showing that he knew about the grievance prior to the disciplinary report. He further contends that, even if he had such knowledge, he would have nonetheless issued the disciplinary report because of Platiniff's threatening and disruptive behavior during the cell search that led to the disciplinary charge, a disciplinary charge to which Plaintiff pled guilty.

In response to the motion, Plaintiff submits a response (Docket Entry No. 33), a memorandum (Docket Entry No. 34), a response to Defendant's SUMF (Docket Entry No. 35), his own declaration (Docket Entry No. 37) and affidavit (Docket Entry No. 38), and copies of grievance records (Docket Entry No. 31-1).[2] Plaintiff argues that: (1) the Court has already decided and adjudicated the merits of his legal claim in the decision rendered after initial review;

---

[2] Plaintiff also filed motions to exclude Defendant's declaration and supporting evidence, motions which were denied by Order entered July 7, 2025 (Docket Entry No. 43).

(2) Defendant has waived the arguments raised in his motion for summary judgment because they were not previously raised by motion or answer; and, (3) Defendant has engaged in bad faith and fraud by presenting confusing, irrelevant, and/or false evidence and arguments.  He also argues that Defendant has not rebutted his allegations and proof of a constitutional violation and that Defendant has not shown that he is entitled to qualified immunity.  Relying primarily on his own declaration and affidavit, Plaintiff contends that genuine issues of material fact exist that require that his claim proceed to trial.

In reply, Defendant asserts that Plaintiff's response to the SUMF lists disputed facts without actually citing to any supporting evidence.  Defendant further asserts that the affidavit and declaration submitted by Plaintiff mostly repeat the allegations that are made in his complaint or set out statements that are either not based upon personal knowledge or are directly contradicted by the evidence submitted in support the motion for summary judgment.  *See* Reply (Docket Entry No. 42).[3]

## IV.  STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a) of the Federal Rules of Civil Procedure.  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party has the burden of showing the absence of genuine factual disputes

---

[3] After Defendant filed his reply, Plaintiff moved for leave to file a sur-reply and to take untimely discovery depositions.  The Court denied both motions.  *See* Order entered July 29, 2025 (Docket Entry No. 46).

from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citation and quotations omitted). "In response, the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (quoting *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993)). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (*quoting Anderson*, 477 U.S. at 252). In the end, there must be evidence upon which the trier of fact could reasonably find in favor of the non-moving party. *Rodgers*, 344 F.3d at 595.

In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). In doing so, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

<h1 style="text-align:center">V. ANALYSIS AND CONCLUSIONS</h1>

A. Constitutional Standards

A claim brought under Section 1983 requires that (1) a defendant act under color of state law and (2) a defendant's conduct deprived the plaintiff of rights secured under federal law. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012). In the instant case, there is no dispute that the first requirement has been met.

As to the second component, the constitutional right alleged to have been violated by Defendant is Plaintiff's First Amendment right to be free from unlawful retaliation. A prison inmate retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Among these rights is the right to pursue grievances against prison officials. *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Thus, a prison inmate may bring a claim that a prison official retaliated against the inmate based on the inmate's use of an administrative prison grievance system. *See Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018); *Violett v. Reynolds*, 76 F.App'x 24, 27 (6th Cir. 2003).

To establish a claim for First Amendment retaliation, Plaintiff must set forth evidence that shows: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and, (3) there is a causal connection between elements one and two—that is, the adverse action was taken at least in part because of the protected conduct. *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 F.App'x. 553, 556 (6th Cir. Dec. 8, 2003).

8

With respect to the causation element, the Supreme Court has clarified that "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (finding that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway")).

B. Qualified Immunity

Qualified immunity protects government officials from civil suits for damages, so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 695 (6th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Reich v. City of Elizabethtown, Ky.*, 945 F.3d 968, 978 (6th Cir. 2019) (internal quotations omitted) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)).

Once the defense of qualified immunity is raised by a defendant, the plaintiff bears the burden to show that qualified immunity does not apply. *Reich*, *supra*. The Court is to employ a two-part test to determine whether a government official is entitled to qualified immunity. *Rieves*, 959 F.3d at 695. It must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established. *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020). The Court may address these two questions in

9

any order, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and the defendant official is entitled to qualified immunity if either question is answered in the negative. *Gordon v. Bierenga*, 20 F.4th 1077, 1082 (6th Cir. 2021).

C. Summary Judgment as to Plaintiff's Claim

After reviewing the parties' filings, the Court finds that, while some factual disputes do exist, there are no genuine issues of material fact that require resolution of Plaintiff's First Amendment retaliation claim at trial. The evidence before the Court is simply not sufficient to permit a reasonable jury to find in Plaintiff's favor at trial. Accordingly, summary judgment should be granted to Defendant on the claim.

The Court first addresses and rejects several general arguments against summary judgment that are made by Plaintiff. Plaintiff argues that the Court has already resolved and determined legal and factual issues in the Memorandum Opinion and Order that was issued upon the initial screening of the lawsuit. *See* Plaintiff's Response at 2-3 and 5. This argument has no merit. Although the Court found upon initial screening that Plaintiff's allegations were sufficient to permit his claim against Defendant to survive initial review under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and to require that process issue to Defendant, the threshold for a claim to pass initial screening is significantly lower than what is required to survive a properly supported motion for summary judgment. Thus, the Court's finding that a claim survives initial screening does not somehow foreclose Defendant's summary judgment arguments for the dismissal of the claim. *See Sublett v. Bryant*, 2017 WL 11773742, at *4 (6th Cir. June 1, 2017) ("The district court's determination that [plaintiff's] retaliation claim survived initial screening neither prevented the defendants from filing motions for summary judgment nor supported dismissal of their motions for summary judgment."); *Bishawi v. Ne. Ohio Corr. Ctr. (NEOCC)*, 2017 WL 1029105, at *2

(N.D. Ohio Mar. 17, 2017) ("determination that plaintiff's complaint was sufficient to withstand the initial screening, set forth in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, cannot be relied upon to defend summary judgment, as the standard of review is entirely different from the one used to evaluate a summary judgment motion."); *Taylor v. Buckles*, 2017 WL 778241, at *7 (E.D. Tenn. Feb. 23, 2017) (noting the significantly different standards utilized at the screening stage and the standard for summary judgment).

The Court also finds no merit in Plaintiff's contention that Defendant has waived summary judgment arguments because they are made for the first time in the instant motion. *See* Plaintiff's Response at 1-2. Evidentiary based arguments are appropriately raised for the first time in a motion for summary judgment because such arguments are generally not amenable to being raised in a motion brought under Rule 12 of the Federal Rules of Civil Procedure. Furthermore, the defense of qualified immunity was raised in Defendant's answer and is a defense that may be asserted at the summary judgment stage even if it was not pursued in a motion to dismiss. *See Baar v. Jefferson County Bd. of Educ.*, 476 F.App'x 621, 625 (6th Cir. 2012); *English v. Dyke*, 23 F. 3d 1086, 1090 (6th Cir. 1994). Finally, Plaintiff relies upon a state rule of civil procedure to support his argument.[4] However, this federal case is not governed by state procedural rules. *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540, 546 (6th Cir. 2014) ("The general rule, of course, is that the Federal Rules of Civil Procedure ... apply to all civil cases brought in federal courts."); *Stanley v. MTP-Paseo Phase II Leasehold, LLC*, No. 3:25-CV-00272, 2025 WL 2813886, at *1 (M.D. Tenn. Sept. 30, 2025) (Cambpell, J.)

---

[4] Although Plaintiff references "Rule 12.08," *see* Plaintiff's Response at 2, there is no such federal rule of civil procedure and the Court presumes that Plaintiff is referring to Rule 12.08 of the Tennessee Rules of Civil Procedure.

11

("Because this case is in federal court, the Federal Rules of Civil Procedure apply, not Tennessee state procedural rules.").

The Court also finds nothing in the record that supports Plaintiff's contention that Defendant has acted in bad faith and perpetrated a fraud upon the Court by presenting what Plaintiff believes is false or misleading evidence and by presenting arguments that Plaintiff believes are irrelevant or that are meant to confuse the issues. *See* Plaintiff's Response at 4. The great majority of summary judgment motions that come before the Court, like the instant motion, involve the parties presenting contradictory versions of the evidence and equally contradictory legal arguments. Such a truism is wholly unremarkable and is not an indicator of bad faith.

Turning now to Defendant's arguments for summary judgement on Plaintiff's claim, the Court finds it most expedient to address the first element of the qualified immunity analysis and determine whether the evidence in the record could support a reasonable finding that Plaintiff's constitutional rights were violated. The Court finds that it does not.

Based on the undisputed evidence,[5] Plaintiff cannot meet the first element of his retaliation claim because his April 24 grievance was not protected conduct. While a prisoner has a First Amendment right to file a grievance against prison officials, the Sixth Circuit has reiterated "the right to file grievances is protected only insofar as the grievances are not

---

[5] The Court pauses at this point to acknowledge that Defendant correctly asserts in his reply that, although Plaintiff filed a response disputing Defendant's SUMF, Plaintiff does not actually cite to any evidence in support of most of his disputes. Local Rule 56.01(e)(3) requires that evidentiary citations be set out to support a disputed factual statement. Rule 56(c)(1)(A) likewise requires genuinely disputed facts to be supported by citing to particular parts of materials in the record. Merely disputing a statement and then signing and dating the disputed statement without reference to actual supporting evidence, as Plaintiff has done with virtually all of his disputed facts (Plaintiff does refer to the grievance at issue in two of his disputes), does not suffice. Accordingly, Plaintiff's response to the SUMF is of little practical use in pointing the Court to any basis for ascertaining the presence of disputed material facts.

'frivolous.'" *Maben*, 887 F.3d at 264 (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). As acknowledged by the Sixth Circuit in *Maben*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." 887 F.3d 252, 264–65 (6th Cir. 2018) (collecting cases). *See Ziegler v. State of Michigan*, 90 F.App'x. 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the prisoner complained that the prison officer should "not be able to conduct a non-invasive pat-down search" of her); *White–Bey v. Griggs*, 43 F.App'x. 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use" to be frivolous and not to "rise to the level of protected conduct"); *Scott v. Kilchermann*, 230 F.3d 1359, 2000 WL 1434456, at *1–2 (6th Cir. 2000) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse).

The undisputed evidence shows that the April 24 grievance concerned only Plaintiff's objection that Defendant was rude, unprofessional, antagonistic, or disrespectful when he spoke to Plaintiff and told him to exit the other inmate's cell. [6] A grievance about the rude or disrespectful way that Defendant spoke simply involves such a trivial and *de minimis* matter that it fails to rise to the level of protected conduct that is necessary to implicate the constitutional protections of the First Amendment. *See Good v. Spencer*, 2022 WL 9813754, at *4-5 (W.D.

---

[6] Even though Plaintiff's complaint asserts that Defendant engaged in targeted acts of harassment toward Muslim inmates, repeatedly searched the cells of Muslim inmates, and took items of personal property from Muslim inmates, the grievance he filed was not about any of these events and addressed only Plaintiff's complaint about the manner in which Defendant spoke to Plaintiff and about his unprofessionalism during the encounter on April 24, 2024. *See* Docket Entry No. 31-1 at 1-2. Indeed, in his deposition, Plaintiff testified that Defendant was "a new officer" and that the April 24 encounter was his "first encounter" with Defendant. *See* Plaintiff's Deposition at 26, lines 12-13.

13

Mich. July 19, 2022) (finding that the plaintiff's complaints that an officer closed the dayroom eight minutes early, used profanity, and reviewed his prisoner file were *de minimis*), report and recommendation adopted, 2022 WL 4354269 (W.D. Mich. Sept. 20, 2022); *Sampson v. Davis*, 2022 WL 2760061, at *3 (W.D. Mich. May 12, 2022) (finding that grievances complaining of verbal abuse in a prison setting are *de minimis* and therefore frivolous and do not constitute protected conduct), report and recommendation adopted, 2022 WL 2753565 (W.D. Mich. July 14, 2022). Likewise, a prisoner's verbal altercation with an officer and/or challenge to an officer's authority is not protected conduct. *See Higgs v. Easterling*, 2012 WL 692610, at *14 (W.D. Ky. Mar. 2, 2012); *Caffey v. Maue*, 679 F.App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's act of calling guards unprofessional was a challenge to the guards' authority that was not protected by the First Amendment). The frivolous and *de minimis* nature of the grievance is even more so in light of the undisputed evidence showing that the grievance was denied because Defendant was correct in telling Plaintiff to exit the cell and thus the cause behind Defendant's interaction with Plaintiff was to enforce the prison's rules.[7]

The Court also finds that, even if Plaintiff were found to have engaged in protected activity, the evidence before the Court falls short of supporting a reasonable conclusion that the causation element of the retaliation claim is satisfied. The causation element requires evidence that shows that the adverse action in question was taken at least in part because of the protected conduct. *Siggers-El*, 412 F.3d at 699.

---

[7] Although Plaintiff argues that he was not reported by Defendant for being in the other inmate's cell, *see* Plaintiff's Memorandum at 5-6, the Court does not find this fact to be material. Prison guards certainly have the discretion to address rule violations by prison inmates in various way, including giving a simple verbal directive as opposed to formally issuing a disciplinary report.

14

Plaintiff presents no direct evidence that Defendant was aware of Plaintiff's April 24 grievance at the time of the events on April 29 when Plaintiff was ultimately issued the disciplinary report. Defendant has presented his own declaration stating that he was not aware of the grievance before the April 29 events. *See* Declaration of Bullard at ¶¶ 6 and 12. Although Plaintiff disputes Defendant's evidence and contends that Defendant "was aware" of the grievance, *see* Plaintiff's Response to SUMF at ¶¶ 6 and 2 and Plaintiffs' Declaration at ¶¶ 11 and 12, Plaintiff's contentions that Sgt. Ricketts informed Defendant of the grievance and that Defendant was aware of the grievance as a result of the protocols for processing grievances are based upon speculation by Plaintiff. Plaintiff has not offered an affidavit or declaration from Sgt. Ricketts nor offered any evidence showing that Defendant was informed of the grievance during the grievance processing protocol. Finally, there is nothing set out in Plaintiff's own declaration or affidavit that directly, or even indirectly, supports Plaintiff's assertion that Defendant had prior knowledge of the grievance at the time of the events on April 29.

Plaintiff's asserts that a retaliatory motive on the part of Defendant can be inferred from Defendant's alleged statements to Plaintiff on April 29 that "I am [going to] show you how to fuck with me" and "you want to fuck with me so I am [going to] fuck with you." For the purposes of determining the summary judgment motion, such statements must be assumed to be true. However, as vulgar and hostile as the statements are, they do not refer to Plaintiff's prior grievance or directly reflect a retaliatory animus against Plaintiff's protected conduct. Indeed, the statements can reasonably be viewed as reflecting general animosity toward Plaintiff rather than a retaliatory animus. Given the lack of any evidence of Defendant's prior knowledge of the grievance and the lack of any other evidence that would tend to infer a retaliatory motive on the

15

part of Defendant, these statements, even if viewed in the light most favorable to Plaintiff, offer only a scintilla of evidence in favor of Plaintiff's claim

Even if Plaintiff's evidence of the two statements were sufficient to infer that Defendant had a retaliatory animus toward Plaintiff, however, the Court finds that this is not enough to support Plaintiff's claim because the undisputed evidence shows that Defendant would have issued Plaintiff the disciplinary charge regardless of Plaintiff's protected activity. The undisputed evidence shows that when Defendant came to Plaintiff's cell on April 29 to initiate a cell search, Plaintiff was not compliant with the Defendant's directive to exit his cell and to permit the cell to be searched but, instead, he refused to leave the cell and demanded that a sergeant or other officer come to the cell. Plaintiff disputes that he made a threat to Defendant to "kick [Defendant's] ass" at the time, but it is nonetheless clear from the undisputed evidence that there was a heated interaction between Defendant and Plaintiff concerning the cell search and that Plaintiff was initially non-compliant and agitated.[8] The Court finds that the factual question about exactly what Plaintiff said to Defendant fails to rise to the level of a genuine issue of material fact given the undisputed fact that Plaintiff was not compliant and was acting disruptively during the cell search.

The Court also cannot ignore the fact that Plaintiff ultimately pled guilty to the disciplinary charge that is alleged by him to be an act of retaliation. While Plaintiff correctly points out that the 6th Circuit in *Maben* explicitly rejected the "checkmate doctrine" as a bar on

---

[8] On this point, the Court notes that correctional officer Lance Hansen declares that, when speaking with Plaintiff while the cell search was occurring, Plaintiff "became angry" about the cell search and stated to Hansen that he would "beat [Defendant's] fucking ass." *See* Declaration of Hansen at ¶ 4. Although Plaintiff asserts that this is "disputed," *see* Plaintiff's Response to SUMF at ¶ 15, he fails to point to any actual evidence in the record that he did not make such a statement to Hansen.

16

an inmate's ability to pursue a retaliation claim, *see* Plaintiff's Memorandum at 11-12, Plaintiff reads the holding in in *Maben* too expansively as it pertains to his claim. While the 6th Circuit in *Maben* found, within the context of determining a motion to dismiss, that "a finding of guilt at a prison misconduct hearing does not act as an absolute bar to a prisoner's First Amendment retaliation claim," 887 F.3d at 262, the 6th Circuit nonetheless held that an inmate's guilt of a misconduct charge may be relevant summary judgement evidence in analyzing an inmate's First Amendment retaliation claim. *Id*. Thus, contrary to Plaintiff's argument, the decision in *Maben* does not prevent Defendant from presenting the guilty plea as evidence that rebuts Plaintiff's contention that the disciplinary charge was an act of retaliation.

Additionally, and importantly in the view of the Court, the *Maben* case is not directly on point with the facts of this case because *Maben* involved an inmate who had contested a disciplinary charge but was ultimately found guilty after a disciplinary hearing. Plaintiff, on the other hand, pled guilty to the very conduct that he now alleges did not occur and that he contends was a false disciplinary allegation against him made as an act of retaliation. Although Plaintiff argues that he entered into the guilty plea under duress and because of coercion from his inmate advisor, the Court finds little weight to such an argument. *See Taylor v. Woods*, 2019 WL 1146690, at \*1 (W.D. Mich. Mar. 13, 2019) (rejecting prisoner's contention that his guilty plea to a disciplinary charge falls under *Maben* and that the guilty plea should also be discounted because he was "coerced" into admitting he violated prison regulations by the threat of "more severe sanctions").

Given the context of the events and the undisputed evidence of Plaintiff's guilty plea, the Court finds that Defendant has adequately shown that a retaliatory motive was not the 'but-for' cause of the disciplinary report that he issued to Plaintiff. As already noted herein, the Supreme

17

Court has clarified that "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399. *See Thaddeus-X*, 175 F.3d at 399 ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.").

Finally, the Court's overwhelming view of the facts of this case is that the case involves what is largely a series of petty conflicts between a prison guard and a prison inmate over the course of a few days. That such conflicts arose is unsurprising given the unique and stressful prison setting. *See Wolff v. McDonnell*, 418 U.S. 539, 562 (1974) ("Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace."). However, the weighty protections of the Constitution should rarely apply to such petty conflicts, *see Owens v. Johnson*, 221 F.3d 1335, 2000 WL 876766, at *2 (6th Cir. June 23, 2000) ("The petty exchanges of insults between a prisoner and guard do not amount to constitutional torts."), and prison inmates may not insulate themselves from adverse administrative actions or routine acts of prison management merely by filing a grievance and then claiming that subsequent objectionable acts by prison officials are retaliatory. *See Spies v. Voinovich*, 48 F.App'x 520, 525 (6th Cir. 2002).

In the end, the Court finds that Defendant has met his burden of showing an entitlement to summary judgment on the claim because no reasonable jury could find, based on the evidence in the record, that Plaintiff suffered a violation of his constitutional rights. Because the Court finds that the evidence does not support a finding that Plaintiff's constitutional rights were violated, it follows that Defendant is entitled to qualified immunity without the necessity of

18

addressing the second prong of the qualified immunity analysis regarding whether the right at issue was clearly established.

## RECOMMENDATION

Based on the foregoing, the Court respectfully **RECOMMENDS** that the motion for summary judgment (Docket Entry No. 28) filed by Defendant Sebastian Bullard be **GRANTED**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Signed By:

*J. Gregory Wehrman*

**United States Magistrate Judge**

19